IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LORETTA WALTERS, a single woman,
And M.W., a minor child,

      Plaintiffs,

v.                                                                          No. 1:24-cv-01044-SMD-LF

JOEL EDUARDO MORA and "JOHN/JANE
DOE MORA," spouse, Individually and on
Behalf of a Marital Community; GLOBAL
FREIGHT SERVICES, LLC; JOHN/JANE
DOES 1–10; ABC CORPORATIONS; and
XYZ PARTNERSHIPS,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on the parties' Joint Petition for Fairness Hearing. Doc. 56. The Honorable Sarah M. Davenport referred the motion to me to conduct a fairness hearing, submit an analysis, including findings of fact, if necessary, and recommend a final disposition. Doc. 57. I conducted a fairness hearing on April 23, 2026, and I recommend that the Court approve the settlement of this case for the minor child, M.W.

The Court reviews settlements involving minor children and incapacitated persons for fairness. *See Garcia v. Middle Rio Grande Conservancy Dist.*, 1983-NMCA-047, ¶ 30, 99 N.M. 802, 808, 664 P.2d 1000, 1006 ("In passing upon settlements dealing with claims or rights of minors, the court must determine whether the approval of a compromise would be in the best interests and welfare of the minor child."), *overruled on other grounds by Montoya v. AKAL Sec., Inc.*, 1992-NMSC-056, 114 N.M. 354, 838 P.2d 971; N.M. STAT. ANN. § 38-4-16 (settlement on behalf of an incapacitated person is "subject to the approval of the court in which the suit is pending").

The Court held a hearing on April 23, 2026, to determine the fairness of the proposed settlement, and whether it was in the best interests of M.W., age 6, who was injured in a car accident involving her grandmother, plaintiff Loretta Walters, and two semi-tractor trailers, one of which was driven by defendant Joel Eduardo Mora and owned by defendant Global Freight Services, LLC.   According to the Guardian ad Litem ("GAL") Report, which relied on the Uniform Crash Report of the New Mexico State Police, on July 11, 2021, at 10:43 pm, Loretta Walters was operating a Kia Shortage, and M.W. was a passenger in the vehicle.   They were traveling on westbound I-10 in Grant County, New Mexico.   The roadway was dark and without supplemental highway lighting.   A sudden dust storm arose which, according to all three drivers, caused "zero visibility" on the interstate.   Ms. Walters was traveling in the left-hand lane and could not see or safely adjust her position, and she slowed or stopped on the road.   The driver of a semi-tractor trailer was traveling behind Ms. Walters, and he did not see Ms. Walters' vehicle in front of him.   The semi-tractor trailer struck Ms. Walters' vehicle from behind.   The impact caused Ms. Walters' vehicle to shift position within the lane.   Plaintiffs alleged the driver of this first semi-tractor trailer did not sufficiently adjust his speed, lane of travel, or position for the "zero visibility" conditions.

Thereafter, Mr. Mora, also traveling westbound on I-10 behind Ms. Walters and the first semi-tractor trailer, could not see any vehicles on the roadway due to the "zero visibility" conditions, and he collided into the KIA.   Plaintiffs asserted that Mr. Mora likewise did not sufficiently adjust his speed, lane of travel or position for the "zero visibility" conditions.   There was conflicting evidence as to whether Ms. Walters was moving or stopped and also as to the speeds of the two semi-tractor trailers.

After the collision, M.W. was transferred by ground ambulance to the University Medical Center of El Paso for evaluation.   M.W.'s physical exam disclosed a fracture of the left femur. M.W. was treated and transferred to El Paso Children's Hospital for more specialized care and ultimately was discharged from El Paso Children's Hospital.   By September 20, 2021, M.W.'s health care provider confirmed that M.W. was healing well.   Maranda Walters, M.W.'s mother, indicated that M.W. was in a cast for about six months, and that after she got out of the cast it took M.W. a couple of months to learn to walk again.   M.W. had fully recovered from her injuries within about nine months of the accident.   M.W. does not need any ongoing physical therapy or care, and she otherwise is a normal child who is growing and developing normally.

Lucinda R. Silva appeared as the court-appointed guardian ad litem (GAL) for M.W.   The GAL's report is thorough and details the history of this case.   *See* Doc. 55.   After reviewing extensive materials as outlined in the GAL report, and after discussing various options with Maranda Walters, Ms. Silva recommended four different structured settlement plans which are outlined in Exhibits 1 through 4 of the GAL report.   Maranda Walters testified at the fairness hearing and stated that after discussing the various options with her attorney, she prefers the plan outlined in Exhibit 2 to the GAL report.

I have considered the evidence and argument presented at the hearing, the GAL report, and the basic terms of the proposed settlement.   I find that the proposed settlement meets the four factors set out in *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322 (10th Cir. 1984) that the court considers when deciding whether to approve a settlement.   These factors are:   "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive

litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Id.* at

324.   I also find that the settlement is in the best interests of M.W.   *See Garcia*,

1983-NMCA-047, ¶ 30, 99 N.M. at 808, 664 P.2d at 1006

The parties negotiated this settlement with the assistance of a private mediator.   Plaintiffs

wrote a demand letter and made a demand on defendants, and defendants responded.   They met

with the private mediator over Zoom, and the mediator went back and forth between the parties

until the parties agreed on a settlement amount.   The case against the other truck driver already

had been settled, and Ms. Silva believed that the parties and the mediator viewed the previous

settlement as a benchmark.   The parties agreed on the settlement at the mediation after several

hours of negotiation.   Maranda Walters participated in all aspects of the settlement negotiations,

and she understood that she did not have to accept the defendants' offer.   She discussed each offer

with her attorneys and was able to ask them questions during the mediation.   Maranda Walters

testified that she was not pressured or coerced into settling the case, that she thought the settlement

was fair and reasonable.   She understood that if the case proceeded to trial, M.W. could get more

than the settlement amount or less, or perhaps nothing.   Maranda Walters would like the Court to

approve the settlement.   Based on the evidence presented at the hearing and in the GAL report, I

find that the settlement was honestly and fairly negotiated.

The GAL report makes clear that there were serious questions of law and fact which placed

the ultimate outcome of continued litigation in doubt.   The primary issue in the case was the

comparative fault of the three drivers, i.e., Loretta Walters and the two truck drivers.   A jury could

determine that Loretta Walters was as much at fault as the two truck drivers.   There also was some

concern that M.W. might not recover as much money if the case proceeded to trial; Ms. Silva

believed that the settlement amount was generous given the injuries M.W. sustained and the fact

that M.W. fully recovered from her injuries within nine months.   Further, all medical bills have been paid from the prior settlement; and no medical expenses need to be paid from this settlement. The uncertainties relating to comparative fault and the amount of recovery if the case proceeded to trial make clear that the value of an immediate recovery now outweighs the mere possibility of future relief after protracted and expensive litigation.

I have reviewed the GAL report and the proposed disposition of the settlement funds.   *See* Doc. 55.   Plaintiffs' attorneys' fees and half the costs of the private mediation will be paid from the settlement proceeds at a rate that is lower than is typical in these types of cases.   Loretta Walters received a settlement amount equal to M.W.'s, and each will pay their pro rata share of the attorney's fees.   Defendants will pay the GAL fees.   I find that the settlement proposed by the parties is fair and reasonable, the portion allotted to M.W. is fair and reasonable, the plaintiffs' attorney fees and costs are fair and reasonable, and the settlement is in M.W.'s best interests.   I also find that the settlement plan as outlined in Exhibit 2 to the GAL report will safeguard the proceeds from the settlement for M.W.'s benefit, and that the plan will maximize the funds available to M.W. in her early adulthood as she becomes independent.

Based on the foregoing, I recommend the following:

1. That the Court find the *Jones* factors are satisfied and approve the proposed settlement agreement;

2. That the Court order payment of the settlement funds be distributed to M.W. as outlined in Exhibit 2 to the GAL Report;

3. That the Court's order approving the settlement and ordering payment of the settlement funds be filed under seal to ensure M.W.'s privacy and the confidentiality of the settlement amount;

4.  That the Court adopt the proposed sealed order submitted by the parties as it includes specific language required by the company providing the structured settlement annuity;

5.  That the Court release Ms. Silva from her duties as guardian ad litem.

_____
Laura Fashing
United States Magistrate Judge